UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
CASE NO.: 1:14-cv-21270-FAM/O'Sullivan

JORGE PORTER,
    Plaintiff,
vs.
COLLECTO, INC., d/b/a EOS CCA,
    Defendant.
_____/

**PLAINTIFF'S REPLY TO DEFENDANT'S RESPONSE IN
OPPOSITION TO MOTION FOR CLASS CERTIFICATION**

This is Plaintiff's ("Porter") reply to Defendant's ("Collecto") response [DE 87] to Plaintiff's motion [DE 83] for class certification. We will address Collecto's seven arguments opposing class certification in the sequence in which they appear in Collecto's response.

**I. BACKGROUND/HISTORY**

Porter generally agrees with Collecto's recitation of this case's factual background an procedural history. [Response at 1-3]. However, as will be discussed below, Collecto has left out some significant procedural events.

**II. LEGAL STANDARDS**

Porter generally agrees with Collecto's recitation of the applicable legal standards. [Response at 3-4].

**III. MOTION TIMELINESS**

Federal Rule of Civil Procedure 23(c)(1)(A) does not provide a fixed or rigid timetable for the Court to resolve the class certification issue. The Rule merely indicates that the determination should be made "[a]t an early practicable time." Local Rule 23.1(c) provides in pertinent part:

> In ruling on any motion by a putative class action plaintiff for a determination under Federal Rule of Civil Procedure 23(c)(1) as to whether an action is to be maintained as a class action, the Court may allow the action to be so maintained, may disallow and strike the class action allegations, or may order postponement of the determination pending discovery or such other preliminary procedures as appear to be appropriate and necessary in the circumstances. Whenever possible, where it is held that the determination should be postponed, a date will be fixed by the Court for renewal of the motion.

We suggest that both rules grant this Honorable Court ample discretion to control the timing of the class determination. There is no question that Porter filed the certification motion after the Court's pretrial motions deadline (2 September 2015). [DE 38]. The timing of the motion was the result of Collecto's conduct.

### A. Collecto's Conduct

Citing to <u>Fitzhenry v. The ADT Corporation</u>, 2014 WL 6663378, *5 (S.D.Fla. Nov. 3, 2014) Collecto argues that Porter waited too long to file his certification motion. However, Collecto conveniently fails to mention that Porter had to ask for, and obtain, discovery orders compelling it to disclose evidence going to the heart of certification. First, on 16 June 2015, Porter had to ask the Court to set Collecto's deposition. [DE 48]. The Court did so. [DE 52, 55]. In <u>Fitzhenry</u>, "In support of his Motion for Class Certification, Plaintiff relies on evidence available to him more than a month before he filed his Motion." <u>Id.</u> at *5. Porter filed his motion less than one week after he obtained the necessary evidence.

After the taking of Collecto's deposition, Porter again had to seek the Court's intervention to compel Collecto to provide evidence of numerosity. The parties reached an agreement on the requested information, as reflected in the Court's order (dated 1 September 2015) on Porter's motion. [DE 80]. On Friday, 11 September 2015 (the date

set by the Court) at 4:58 PM, Collecto's counsel tendered the declaration of Ms. Catherine Belmore. *See* exhibit A (e-mail from Dale Golden to Leo Bueno, redacted). That declaration was part and parcel of Porter's certification motion filed 6 days later on 17 September 2015. [DE 83-15]. Thus, unlike the Plaintiff in Fitzherny, Porter has shown the Court an adequate reason for the motion's delayed filing.

### B. No Prejudice

Furthermore, Collecto has not shown that it has in any way been unfairly prejudiced. *See*, e.g., Arnold v. Arizona Dept. of Public Safety, 233 F.R.D. 537, 541 (D.Ariz.2005) ("Courts applying Rule 23, as amended, do not deny class certification based on timeliness unless the delay has prejudiced a defendant."). *See also* Probe v. State Teachers' Retirement System, 780 F.2d 776, 780 (9th Cir.1986) (holding that an eighteen-month delay in moving for class certification was reasonable because plaintiffs used that time to conduct discovery to determine the number of potential class members and the defendants did not claim that they were prejudiced by the delay).

## IV. COUNSEL'S ADEQUACY

Collecto's first attack on undersigned counsel's adequacy bootstraps the timeliness argument, *i.e.*: Counsel is inadequate because he filed the certification motion too late. We hope to have shown the Court a valid and sufficient justification for the motion's timing. Then Collecto argues that the undersigned is so unfamiliar with the Federal and Local rules that he is unfit to represent the class. Collecto references the failure to comply with Local Rule 7.1, sections (c)(2) and 7.1(a)(3), with respect to Porter's response to Collecto's motion to dismiss for lack of subject matter jurisdiction. [DE 11]. Porter filed that motion at 6:18 PM on 13 May 2015

and less than 24 hours later sought to remedy the violation. *See* exhibit B (CM/ECF e-mail notices). Collecto's assertion that the undersigned is unfamiliar with the requirements of Local Rule 7.1 is ill-conceived. As shown in exhibit C (motion for extension of time to respond to motion to dismiss in <u>Barturen v. Credit Card Receivables Fund Incorporated</u>, No. 1:09-cv-20001-PAS (S.D.Fla. 2009)), the undersigned has been familiar and complied with the rule's requirements since at least 7 March 2009. Admittedly, the failure to contact Collecto's counsel prior to filing the subject motions was an oversight, not lack of familiarity with Local Rule 7.1.

Lastly, quoting *its* response to Porter's motion to continue pretrial deadlines as if somehow it had some sort of precedential value, Collecto attempts to show the undersigned's unfamiliarity with Rule 16. [Response at 11]. We suggest that because it cannot, Collecto cites no authority for the proposition that such motion required a formulaic recitation of Rule 16, especially given that the Court's own *Scheduling Order Setting Trial* [DE 38] indicated how the parties were to proceed when seeking such relief.

### V. PLAINTIFF'S FINANCIAL ADEQUACY

Asserting that the costs of mailing the class notice will be substantial because the class is large, Collecto tries to defeat certification by arguing that Porter has not personally agreed to foot the mailing costs, and therefore is not an adequate class representative. We do not dispute that mail is the likely best class notice method in this case. We dispute that Porter *personally* has to foot the *entire* bill. Porter is willing to pay his fair share, a fact Collecto selectively ignores in its argument:

> Q. Well, I understand what you are telling me, but you are not really answering my question. My question is if I say to you, Mr. Porter, I am going to need a check from you for $10,000 to pay for notice to the class is that something that you would be able to do?

>THE WITNESS: Sure, I would be able to do that.

[DE 87-2, Exhibit B, Porter Deposition Transcript at 38: 17-25 (counsel's objection omitted)].

Federal courts have held that despite any state requirements to the contrary, overriding federal law specifies that class representatives need not be responsible for more than their *pro rata* share of litigation expenses. The leading case on the issue is <u>Rand v. Monsanto Company</u>. 926 F.2d 596, 601 (7th Cir. 1991). *See also* <u>Schwarm v. Craighead</u>, 233 F.R.D. 655, 662 (E.D. Cal. 2006); <u>Peterson v. H&R Block Tax Servs.</u>, 174 F.R.D. 78 (N.D. Ill. 1997); <u>Lai v. Anthony</u>, [1991] Fed. Sec. L. Rptr. (CCH) ¶ 96,174, 1991 WL 208443 (D. Haw. July 5, 1991); <u>Cnty. of Suffolk v. Long Island Lighting Co.</u>, 710 F. Supp. 1407, 1415 (E.D.N.Y. 1989) (proper for attorney to advance costs of litigation even though client could not reimburse attorney unless action succeeds), *aff'd*, 907 F.2d 1295 (2d Cir. 1990). Thus, Collecto's argument is somewhere between irrelevant, according to <u>South Carolina Nat'l Bank v. Stone</u>, 139 F.R.D. 325, 329 (D.S.C. 1991) (named plaintiff's willingness, or lack thereof, to advance full costs of litigation or of class notice is irrelevant), and a preposterous charade, according to <u>In re Oracle Sec. Litig.</u>, 136 F.R.D. 639, 643 (N.D. Cal. 1991) ("To require recoupment of litigation expenses from the class representative is at odds with Rule 23"; notion of a class representative willing to bear entire cost is "preposterous charade");

As the <u>Monsanto</u> court held, even if a state rule or rule from this Court purported to require a named plaintiff to bear all of the expenses personally, the requirement would be inconsistent with Federal Rule of Civil Procedure 23 and hence invalid. <u>Monsanto</u>, 926 F.2d at 600. Additionally, the Monsanto court noted that "[t]he very feature that makes class treatment appropriate—small individual stakes and large aggregate ones—ensures that the representative

will be unwilling to vouch for the entire costs. Only a lunatic would do so. A madman is not a good representative of the class!" Id. at 600. Porter is an educated State of Florida real estate licensee, hardly an example of a madman. [DE 83-16].

## VI. PLAINTIFF'S CREDIBILITY

### A. Counsel's Interference

In the process of purportedly attacking Porter's credibility, Collecto smears undersigned counsel with the unfounded accusation that he prevented Porter from settling his case. The problem is that Collecto relies on conjecture, suppositions and insinuations to make its claim. For example, Collecto relies on the affidavit of one of its lawyers, Mr. Charles McHale:

> 11. During the telephone call from Alex, I heard another person in the background talking and giving directions to Alex. I ***believe*** it was Mr. Porter in the background as the person in the background was coaching Alex in terms of what to say.

[DE 87-3 at 2 (bold italics added)]. On what basis could Mr. McHale possibly conclude that Mr. Porter was the person in the background? Had Mr. McHale ever heard Mr. Porter's voice before? We ask the Court to rely on sworn testimony, not on a party's lawyer's belief.

Collecto has attempted to weave a tale that Porter urged and coached his friend and business associate Efrain Martell into calling Collecto's counsel to attempt to settle this case individually because his lawyer was preventing him from settling the case. Porter's sworn testimony conclusively negates Collecto's theory. [DE 87-2, Exhibit B, Porter Deposition Transcript, page 56 line 7 to page 62 line 12]. We also refer the Court to attached Exhibit D, Porter's supplemental declaration, which confirms that his undersigned lawyer has not interfered with Porter's settlement decisions.

### B. Counsel Did Not "Investigate the Issue"?

With no facts to back its assertion, Collecto takes another swipe at the undersigned when it speculates that he did not "investigate the issue" of Alex's identity[DE 87 at 15]. There was no need to send a subpoena to anybody. It only took $9.99 to ascertain that 305-310-6429 belonged to Mr. Martell plus a web search at the Florida Department of State Division of Corporations (http://sunbiz.org/) to confirm it. It only took a meeting with Mr. Porter to ascertain that he did not coach Mr. Martell to call Collecto's counsel. *See* attached Exhibit E, supplemental declaration of Leo Bueno.

### C. Martell's Credibility

Collecto attempts to bolster its tale by insinuating that Porter interfered with its service of Mr. Martell's deposition subpoena, then attacks Martell's credibility and imputes it on Porter jointly. [DE 87 at 17]. We suggest this is a classic red herring. Fist, Mr.Martell is obviously not the putative class representative, but more importantly, as the court explained in Hawkins v. Securitas Sec. Services USA, Inc., 280 F.R.D. 388, 395. (2011):

> For an assault on a class representative's credibility to succeed, the party mounting the assault must demonstrate that there exists admissible evidence so severely undermining plaintiff's credibility that a fact finder might reasonably focus on plaintiff's credibility, to the detriment of the absent class members' claims." 637 F.3d at 728; *see also People United for Children, Inc. v. City of New York,* 214 F.R.D. 252, 264 (S.D.N.Y.2003) ("In order to defeat certification, credibility problems must be so substantial that they call the validity of the plaintiffs' entire case into question.") (internal quotation marks omitted).

We suggest that Collecto's insinuations about Porter's credibility do not even come close to meeting the requisite standard for disqualification of a putative class representative.

### VII. PREDOMINANCE OF COMMON QUESTIONS

In bold italics, Collecto cleverly attempts to steer the Court to conduct its analysis from

the perspective of debtors who actually *received* the dunning letters in question. [DE 87 at 19].

### A. It's The Sending Not The Receiving

The problem with Collecto's argument is that it runs counter to established Fair Credit Reporting Act law: *sending* the letters, not their receipt, imposes liability. Bartlett v. Heibl, 128 F.3d 497, 499 (7th Cir. 1997); Kuhn v. Account Control Technology, Inc., 865 F. Supp. 1443, 1450 (D. Nev. 1994) ("[The] argument that Kuhn never received the letter or did not read it is of no moment on the issue of whether a violation has occurred. The language of §1692g (one of the two sections of the FDCPA at issue here, along with §1692e) is clear that a notice of debt must contain the enumerated disclosures; it does not require that a debtor must actually be misled by a failure to do so"); Savino v. Computer Credit, 960 F. Supp. 599, 605 (E.D.N.Y. 1997); Morgan v. Credit Adj. Board, Inc., 999 F. Supp.803 (E.D. Va. 1998). *See also* Naas v. Stolman, 130 F.3d 892, 893 (9th Cir. 1997) (a violation is complete when a dunning letter is mailed because that date is the collector's "last opportunity to comply" with the FDCPA); Mattson v. U.S. West Communications, Inc., 967 F.2d 259, 261 (8th Cir.1992) (same). So, whether the Collecto letters' recipients did or did not speak Spanish is of no moment. Upon their mailing, either the letters violated the Act or they did not.

#### *1. Logical Extension Of Least Sophisticated Consumer Standard*

The idea that FCRA violations occur upon the sending of collection letters is a logical extension of a well-established principle: when analyzing collection communications, courts apply the "least sophisticated consumer" standard. Jeter v. Credit Bureau, Inc., 760 F.2d 1168, 1175 (11th Cir. 1985). This is an *objective* standard that scrutinizes the language in question for its tendency "'to mislead the least sophisticated'" consumer, in order to give effect to the

FDCPA's purpose of protecting consumers. Id., at 1175 (*quoting* Wright v. Credit Bureau of Ga., Inc., 548 F.Supp. 591, 599 (N.D. Ga. 1982). Courts may assume, however, that the least sophisticated consumer will "possess a rudimentary amount of information about the world" and will not make "unreasonable misinterpretations." Rivera v. Amalgamated Debt Collection Servs., 462 F. Supp. 2d 1223, 1227 (S.D.Fla. 2006) (quotations omitted). Discussing the Federal Trade Commission Act, which guided its adoption of the "least sophisticated consumer" standard for the FDCPA, the Jeter court explained why perspective matters:

> That law was not "made for the protection of experts, but for the public-that vast multitude which includes the ignorant, the unthinking, and the credulous," *Florence Mfg. Co. v. J.C. Dowd & Co.*, 2 Cir., 178 F. 73, 75 [ (1910) ]; and the "fact that a false statement may be obviously false to those who are trained and experienced does not change its character, nor take away its power to deceive others less experienced."

Jeter, 760 F.2d 1168, at 1172-1173; *accord, e.g.,* LeBlanc v. Unifund CCR Partners, 601 F.3d 1185, 1193-1194 (11th Cir. 2010). These standards apply even in the standing context.

Analyzing a collection letter analogously rendered unlawful by its inclusion of Spanish text, the court in Ehrich v. I.C. System, Inc., 681 F.Supp.2d 265, 270 (E.D.N.Y 2010) noted: "Furthermore, a plaintiff's *subjective reaction* to a debt collection letter is irrelevant to a determination of standing." Id. The Erich court then explained that the FDCPA enlists sophisticated consumers (like Porter) to act as private attorney generals to help their less sophisticated counterparts who were unlikely to file suit (class members). Id.

The Erich plaintiffs spoke English; it is not clear if they also spoke Spanish. Id. at 268, fn. 2. It mattered not, as the court explained in its finding that the collection letter violated the FDCPA:

> Unlike these prior cases where notice was plainly stated, the FDCPA notice here was ambiguous to Spanish-speaking consumers. Although the notice was provided in

> English, from the perspective of Spanish-speaking consumers, it was not plainly stated if they were unable to understand the English. Instead, the letter left the Spanish-speaker uncertain as to his or her rights, failing to clearly state the available options.

Id. at 272. The objectivity perspective extends to the class context.

In Talbott v. GC Services, 191 F.R.D. 99, 103 (W.D.Va. 2000), the district court, addressing the proposed class of Virginia Class Members (VCM), stated: "Because it seems that a plaintiff need not actually read the letter, . . ., whether a VCM actually received the letter is not dispositive." So, whether the recipients of Collecto's letters spoke English, Spanish, either, both or neither, matters not to the two questions on the merits which apply to all the debtors to whom Collecto sent its letter with the offending Spanish text: (1) did the letters violate the FDCPA's section 1691g, and (2) did the letters violate the FDCPA's section 1691e.

## VII. NUMEROSITY

Just like its predominance argument, Collecto's numerosity attack is predicated on the receipt of its letters. We hope to have shown the Court such analysis is misplaced, since the operative action is the mailing, not the receiving of the letters.

## IX. ADMINISTRATIVE FEASIBILITY

Since a debtor's reading of an offending dunning letter is not a prerequisite to FDCPA liability, it matters not whether a class member is, as Collecto puts it, a "Spanish literate individual". [DE 87 at 24]. Thus, the ascertainability of class members is self-evident: if Collecto sent a Floridian a letter with the mangled Spanish text, that person is a member of the class.

## X. CONCLUSION

Porter asks the Court to overrule Collecto's challenges to his class certification motion.

Respectfully submitted on 26 October 2015 by
/s/ Leo Bueno
Leo Bueno
Fla. Bar #: 716261
LEO BUENO, ATTORNEY, P.A.
P.O. Box 141679
Coral Gables, FL 33114-1679
305-669-5260; 305-328-9301 [fax]
Leo@BuenoLaw.com
Attorney for Plaintiff

Certificate of Service

I certify that on 26 October 2015 I electronically filed this document with the Clerk of the Court using CM/ECF. I also certify that the document is being served this day on all counsel of record or *pro se* parties identified on the attached Service List in the manner specified, either via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronically Notices of Electronic Filing.

/s/ Leo Bueno
Leo Bueno, Fla. Bar # 716262

Service List

Dale T. Golden
Florida Bar No.: 0094080
Benjamin W. Raslavich
Florida Bar No.: 0102808
Charles J. McHale, Jr.
Florida Bar No. 26555
GOLDEN SCAZ GAGAIN, PLLC
201 North Armenia Avenue
Tampa, Florida 33609-2303
Phone: (813) 251-5500
Fax: (813) 251-3675
dgolden@gsgfirm.com
braslavich@gsgfirm.com
Counsel for Defendant
Via CM/ECF

U:\CLIENTS\Porter Jorge [Collecto] 0353\Motions and Responses\Porter Jorge Reply to Response to Motion for Class Certification.doc